

### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| **KIMBERLY D. ROE,** | : |
| Plaintiff, | : Civil Action No.: |
| Vs. | : **C-3-03- 192** |
| **DONALD H. RUMSFELD,** | : **WALTER HERBERT RICE** |
| in his official capacity as | : **COMPLAINT** |
| SECRETARY and Head of the | : |
| UNITED STATES DEPARTMENT OF DEFENSE, | : |
| Office of the Secretary of Defense | : (Jury Demand Endorsed Hereon) |
| 1000 Defense Pentagon | : |
| Washington, DC 10301-1000 | : |
| Defendant. | : |

### COMPLAINT

### Nature of Complaint

1. This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq., providing for relief from discrimination in employment on the basis of race and sex, and prohibiting retaliation against individuals for opposing discrimination and unlawful employment practices. There are also claims for violations of the Civil Rights Acts of 1866 and 1871, as amended and enforced through the Reconstruction Era statutes 42 U.S.C. §1981, 42 U.S.C. §1983, and 42 U.S.C. §1985. Additionally, there are claims for negligence, breach of contract, intentional infliction of emotional distress, negligent infliction of emotional distress, and civil conspiracy. The facts of this case will show that the Defendants' official, individual and joint actions are replete with wrongful and unlawful

conduct that has caused injury, damages, and losses to the Plaintiff.

## Jurisdiction and Venue

2. This court has subject matter jurisdiction of this complaint and these claims pursuant to 28 U.S.C. §1331 because this action arises under the Constitution and the laws of the United States.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391.

4. Plaintiff Kimberly D. Roe has complied with the conditions precedent to filing a civil action pursuant to Title VII of the Civil Rights Act of 1964, as amended.

## Parties

5. Plaintiff Kimberly D. Roe ("Roe") is a current civilian employee of DOD, and is employed as a GS-326-05 at WPAFB. She is an African American.

6. Roe has applied for new positions and promotions at WPAFB, and will continue to apply for new positions and promotions at WPAFB and DOD on a regular basis in the future.

7. Defendant Donald Rumsfeld ("Rumsfeld") is the Secretary of the Department of Defense ("DOD") and is named as a defendant in this action in his official capacity as the head of DOD. DOD is headquartered in Washington, DC and is an executive department of the Federal Government of the United States of America. As the head of DOD, Rumsfeld directs, approves, and /or is responsible for all official actions at DOD.

8. Wright-Patterson Air Force Base ("WPAFB") is located in the State of Ohio and is a facility under the direction and control of Rumsfeld and DOD.

## Background

9. Since at least 1999, Roe has been subjected to a continuous pattern of discrimination,

retaliation, harassment, and a hostile work environment at WPAFB, which is related to her efforts to obtain an upgrade of her position as approved by Brooks AFB and a promotion.

10. DOD, through the actions and inactions of DOD supervisory personnel and others, without just, reasonable or legal cause, has denied Roe the upgrade of her position as approved by Brooks AFB and a promotion.

11. During the relevant times of this action, Roe was the only African American civilian employee working in the Family Advocacy Program at WPAFB.

12. Upon information and belief, the management and staff of the Family Advocacy Program at WPAFB includes individuals who are professionals trained to deal with mental health and abuse issues.

13. On August 4, 1999, Roe filed an EEO complaint against Captain David F. Swayne for sex and race discrimination. The EEO complaint was purportedly resolved through a settlement negotiation in which Roe, who was without the direct aid and assistance of her Union representative and who did not have legal counsel, was pressured and coerced into signing a settlement agreement.

14. Even after the EEO complaint and the purported settlement thereof, Swayne was intent upon denying Roe the upgrade of her position and a promotion.

15. Captains Gregory Postal and Michelle Loper worked as Lieutenants under Captain David F. Swayne when Roe filed charges of discrimination against Captain Swayne.

16. Postal and Loper had an allegiance to Swayne and sought to further Swayne's intentions and retaliation against Roe.

17. Postal and Loper were Captain Swayne's successors and direct supervisors of Roe, after Swayne was transferred to another base.

18. On December 20, 2000, January 31, 2001, February 2, 2001, March 20, 2001, and May 25, 2001, Roe filed charges of discrimination and retaliation and otherwise engaged in "protected activity".

19. Swayne, Postal, and Loper were the primary subjects and offenders in the charges of discrimination and retaliation.

20. On November 28, 2000, Roe was given performance feedback from her supervisor, Captain Gregory Postal, in the presence of her new supervisor, Captain Michelle Loper, which did not accurately reflect Roe's work performance.

21. On or about January 18, 2001, while Roe and a co-worker (Ruth Rozak) were reviewing a document, Captain Loper entered the room and said to them, "I thought you were getting ready to kiss." This comment by management is of a sexual nature and created a hostile environment for Roe based on her sex (female).

22. On or about January 25, 2001, during a meeting of several employees within the Family Advocacy Program at WPAFB, Captain Loper made an inappropriate sexual comment to Roe and Rozak, saying, "Next, you will be holding hands." This comment by management was of a sexual and offensive nature and created a hostile environment based on Roe's sex (female).

23. Immediately after the meeting, Roe sought to address the issue with Captain Loper and ultimately discussed it with SSgt Margaretta Glenn who was the non-commissioned officer in charge (NCOIC).

24. Captain Loper's comments offended Roe and made Roe feel very uncomfortable because the comments were of a sexual nature and inappropriate for the workplace. Captain Loper's comments suggested that Roe and Rozak were lesbians engaging in conduct of a sexual or romantic nature in the workplace.

25. On January 25, 2001, Joanne Austin, white female, during a Family Advocacy Program board meeting, in response to another individual's question, described a woman with a cut lip as "she is African American and they have quite thick lips." Such racial stereotypes being espoused by this co-worker was inappropriate and further created a hostile environment for Roe, the only African American civilian employee working in Family Advocacy at WPAFB.

26. Throughout 2001, DOD's discrimination, retaliation, harassment, and hostile work environment against Roe increased and became more persistent.

27. On or about March 6, 2001, Roe learned that she was the only member of the administrative staff that was bound to the time constraints in a letter dated July 24, 2000. Other co-workers and employees were not impacted by and held accountable to the time constraints as was done to Roe by DOD management.

28. On March 30, 2001, Roe received a memorandum of counseling for her participation in an informal EEO complaint and a copy was placed in her 971 file (personnel file).

29. On April 2, 2001, Roe learned that two memorandum of records relating to her prior EEO activity had been placed in her 971 file.

30. On April 3, 2001, Roe's first-level supervisor (Captain Loper) told Roe that she would update Roe's Civilian Performance Plan to reflect the duties identified on the GS-

0186-07, Social Services Assistant Core Document. Roe's performance plan was not updated.

31. On April 3, 2001, Roe's first-level supervisor discussed Roe's EEO participation in the presence of a co-worker.

32. On April 4, 2001, Roe was denied use of official time to discuss her EEO complaint with her Union representative and was instructed to document her need for case consultation with AFMC Form 949.

33. On April 5, 2001, Roe was again denied use of official time to consult with her union representative on her EEO complaint. Roe's request to visit the EEO office was also denied.

34. On or about April 16, 2001, Roe's duties and responsibilities were inappropriately changed and she was required to perform receptionist duties that prevented her from performing her specialist duties.

35. On or about April 17, 2001, DOD management directed Roe not to leave her workstation even to fulfill basic human needs.

36. DOD management's unreasonable and demeaning demands on or about April 17, 2001 resulted in Roe "losing control of her bodily functions" and "having an accident on herself" before she could get to a restroom. Roe had recently returned to work from medical leave, and, while Roe could perform her job duties, her body was still weak from the medical condition and the surgical procedures.

37. DOD management knew of Roe's medical condition when making the unreasonable and demeaning demands on or about April 17, 2001. DOD management intended to create a hostile work environment and humiliate Roe.

38. On September 11, 2001, Roe received her annual AF Form 860A, Civilian Performance and Promotion Appraisal with ratings which were lower than she deserved during the rating period of April 1, 2000 through March 31, 2001.

39. Captain Michelle Loper was responsible for giving Roe the low ratings.

40. Roe had received "Superior" ratings for each of the several rating periods immediately prior to the Performance Appraisal given by Captain Loper in 2001.

41. Roe has received "Superior" ratings for each of the rating periods (to wit, 2002 and 2003) that have come immediately after the Performance Appraisal given by Captain Loper.

42. On or about December 22, 2001, Captain Loper told Roe that she (Captain Loper) had asked Colonel Griffith to hold up submitting the documentation for the position upgrade until she (Captain Loper) had a chance to evaluate Roe's performance herself.

43. Captain Loper gave Roe a lower rating than she deserved to make Roe appear as an unqualified or less-qualified applicant for the "Social Services Assistant (Office Automation) GS-186-6/7" position that was to be posted for a "Fill" action in 2001.

44. Captain Loper was intent upon denying Roe the promotion and upgrade that Roe had been seeking since 1999.

45. Captain Loper's actions were discriminatory and in retaliation for Roe's EEO charges filed against Captain David Swayne. Captain Swayne was one of Loper's predecessors and her former boss.

46. Captains Gregory Postal and Michelle Loper worked had worked under Captain David Swayne as Lieutenants when Roe filed charges of discrimination against Captain Swayne.

7

47. Postal and Loper were Captain Swayne's successors and direct supervisors of Roe, respectively, after Swayne was transferred to another base.

48. After Swayne was transferred, he continued to have contacts with Postal and Loper during their tenures as Roe's first-level supervisor.

49. Swayne tainted the subsequent management and promoted retaliation that denied Roe a fair and equal opportunity to obtain the upgrade and promotion that she had sought since 1999.

50. DOD management has continuously denied Roe an upgrade of her position and a promotion.

51. In 2001, the position in which Roe was then employed was improperly and inappropriately posted for a "Fill" action internally as a "Social Services Assistant (Office Automation) GS-0186-6/7". Roe was performing the duties of the upgraded position and should have been automatically given the upgrade.

52. DOD management and Civilian Personnel did not inform Roe that her position had been upgraded.

53. Roe learned of the upgrade through other sources and decided to submit an application for the position.

54. Roe, after having submitted an application for the said GS-0186-6/7 position, was not interviewed for said GS-0186-6/7 position.

55. No internal applicant was selected, and Roe, who was performing the duties of the position, was still not interviewed by DOD management for said position.

56. In late 2001, the position (Family Advocacy Data Support Specialist) in which Ms. Roe was employed was improperly and inappropriately posted for a "Fill" action through the consideration of <u>external</u> job candidates as a GS-186-6/7.

57. On October 1, 2001, Roe became aware that her position was advertised externally and neither her first-level supervisor or the Office of Civilian Personnel notified her.

58. Roe, again, applied for the position and, again, was not given an opportunity to be interviewed or considered for the position by DOD management and Civilian Personnel.

59. Other than the Defendant's discrimination and retaliation against Roe, there is no reason for DOD management and Civilian Personnel refusing to fill the position internally with Roe since Roe was sitting on the position and already performing the duties.

60. In the first week of January 2002, Roe received a letter from Civilian Personnel, which was dated December 21, 2001, that stated that Roe was rated qualified for the position, but was not selected.

61. Roe's first-level supervisor told Roe that she chose someone else for the position and ordered Roe to sit at the front desk and forced Roe into receptionist duties. Roe was told that she was being placed in an overage slot until something else could be found for her.

62. Roe later learned that the individual selected for the position (a white male) had no experience or specialized training to fulfill the requirements of the position.

63. As of January 10, 2002, Roe had received no official documentation from Civilian Personnel or her first-level supervisor reflecting the change in duty assignment.

64. On December 19, 2001, Roe was given a letter of Notification of Change of Duty Assignment.

9

65. In or about late 2001/early 2002, as Roe continued to engage in protected activity, DOD management and Civilian Personnel improperly and inappropriately changed Roe's grade/series from GS-303-5 to GS-326-5. This change was an adverse employment action because a 326 series has far less advancement opportunities than a 303 series.

66. Roe was interviewed for a GS-6 position at AFMC/SG. During the interview, the interviewer could not understand why Roe's ratings dropped dramatically from Superior to 3s and 4s. The interviewer stated that he wanted to talk to Roe's supervisor concerning the ratings. Roe believes she was not selected based upon information that the interviewer received from Roe's supervisor.

67. Throughout the events and occurrences set forth above, from 1996 until December 28, 2001, Roe continued to do a higher grade of work in Family Advocacy at WPAFB without receiving the credit for the work or the higher pay.

68. As a direct and proximate result of the discrimination and retaliation, Roe has suffered injury, harm and losses, including but not limited to loss wages, loss of promotion, severe stress, embarrassment, humiliation, emotional distress, health difficulties, loss of opportunity for advancement, inaccurate performance ratings, harm to her reputation, and the incurring of attorneys fees.

**Count I**

69. Plaintiff incorporates by reference paragraphs 1 through 58 above.

70. Defendant has engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. §2000e, et seq., as amended, including but not limited to 42 U.S.C. §2000e-16.

71. Defendant's unlawful employment practices include, but are not limited to, disparate treatment and disparate impact directed towards Plaintiff Roe.

72. As a direct and proximate result of the discrimination and retaliation, Roe has suffered injury, harm and losses, including but not limited to loss wages, loss of promotion, severe stress, embarrassment, humiliation, emotional distress, health difficulties, loss of opportunity for advancement, inaccurate performance ratings, harm to her reputation, and the incurring of attorneys fees.

**Count II**

73. Plaintiff incorporates by reference paragraphs 1 through 61 above.

74. Defendant has engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. §2000e, et seq., as amended, including but not limited to 42 U.S.C. §2000e-16.

75. Defendant's unlawful employment practices includes retaliation against Plaintiff Roe where Roe has engaged in protected activity and suffered an adverse employment action that is causally connected to Roe's protected activity.

76. As a direct and proximate result of the discrimination and retaliation, Roe has suffered injury, harm and losses, including but not limited to loss wages, loss of promotion, severe stress, embarrassment, humiliation, emotional distress, health difficulties, loss of opportunity for advancement, inaccurate performance ratings, harm to her reputation, and the incurring of attorneys fees.

11

**Request For Relief**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment for Plaintiff and award the following relief:

a)  To be made Whole;

b)  To be promoted to a GS-186-7;

c)  An award of back pay;

d)  To have the inaccurate Performance Appraisal re-done to reflect Plaintiff's true performance of "Superior".

e)  An award for compensatory damages of at least $150,000 for bodily injury, embarrassment, humiliation, and emotional distress;

f)  An award to Plaintiff of attorney's fees and for costs of suit; and

g)  An award of such other relief as the Court may deem just and proper.

_/s/ Ambrose Moses, III_
Ambrose Moses, III (Atty. Reg. No. 0055231)
Attorney for Plaintiff
P.O. Box 29250
Columbus, Ohio 43229
(614) 418-7898

**JURY DEMAND**

Plaintiff hereby requests a trial by jury.

_/s/ Ambrose Moses, III_
Ambrose Moses, III (Atty. Reg. No. 0055231)
Attorney for Plaintiff