IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


KIMBERLY D. ROE,                          :

    Plaintiff,                            :
                                           Case No. 3:03cv192

       vs.                               :
                                           JUDGE WALTER HERBERT RICE

ROBERT M. GATES,[1]                       :

    Defendant.                           :


---

**DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (DOC. #41) AND SUSTAINING PLAINTIFF'S
MOTION FOR PARTIAL RELIEF FROM JUDGMENT OR ORDER (DOC.
#78), AS PROVIDED HEREIN; JUDGMENT TO ENTER IN FAVOR OF
DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY**

---

Plaintiff, Kimberly Roe, was a civilian data support specialist, at Wright

Patterson Air Force Base ("WPAFB"), from 1996-2001.  Roe brings this action

against her employer, the Secretary of Defense.  Over the course of Roe's

employment at WPAFB, she lodged various complaints and grievances, pursuant to

the process provided by the Equal Employment Opportunity Commission ("EEOC")

and the American Federation of Government Employees Union, Local 1138 ("the

union"). Doc. #11 (Am. Compl.).  Central to the allegations made by Roe against

the Secretary, in this litigation, is the Secretary's failure to select Roe for a newly-

---

[1]The Secretary of Defense at the time the Plaintiff commenced this litigation
was Donald H. Rumsfeld.  The current Secretary of Defense, who is automatically
substituted as a party defendant in accordance with Federal Rule of Civil Procedure
25(d), is Robert M. Gates.

created position at WPAFB, which Roe alleges was prompted by racial discrimination and in retaliation for her participation in the aforementioned protected conduct. Id. at 1, 16-17. Roe also alleges that the Secretary subjected her to a hostile work environment, as a result of her participation in the protected conduct, as well as intentionally inflicting severe emotional distress upon her. Id. ¶¶ 96-103, 117-20. Specifically, the Plaintiff brings four claims against the Defendant, to wit: hostile work environment (Count 1), racial discrimination (Count 2), retaliation (Count 3), and intentional infliction of emotional distress (Count 4). Id.

Presently before the Court is the Defendant's Motion for Summary Judgment, as to all of the Plaintiff's claims. Doc. #41. Also before the Court is the Plaintiff's Motion for Partial Relief from Judgment or Order, which pertains to a Decision regarding a Motion to Strike (Doc. #77) that was previously filed in this case. Doc. #78.

The Court will begin its analysis with a decision concerning the Plaintiff's Motion for Partial Relief from Judgment or Order, followed by a review of the pertinent facts of this case. It will then turn to a summary of the legal standard to which it must adhere, in ruling on the Defendant's Motion for Summary Judgment, and then move to an analysis of the details of the present case.

I.     Motion for Partial Relief from Judgment or Order (Doc. #78)

The Plaintiff has filed a Motion (Doc. #78), asking the Court to vacate part of its Decision of August 31, 2009 (Doc. #77), in order to "correct an oversight of the Court" in deciding to disregard one of the memoranda filed by the Plaintiff (Doc. #63), in opposition to the Defendant's pending Motion for Summary Judgment.

In the Decision of August 31, 2009 (Doc. #77), the Court ruled on a Motion from the Plaintiff, wherein she asked the Court to strike the Defendant's sur-sur-reply memorandum and, alternatively to allow her to file a sur-sur-sur reply memorandum. Doc. #66.  In the course of that Decision, the Court outlined what it described as the "quite out of the ordinary" filing conduct in this case, to include the following:  the Plaintiff's filing of a second memorandum in opposition, without permission from the Court (Doc. #59); the Plaintiff's failure to file her sur-reply memorandum, after having sought and received permission to do so (Doc. #62; Not. Order, dtd. Mar. 13, 2009); and the Plaintiff's filing of a third memorandum in opposition, without permission from the Court (Doc. #63).  Along with other matters it had been asked to consider, the Court ultimately concluded that the Plaintiff's second and third memoranda in opposition had not been properly filed and, thus, would not be considered by the Court in ruling on the pending Motion

for Summary Judgment. Doc. #77 at 7.[2]

A look back further on the docket of this case indicates that, on February 17, 2009, the Plaintiff filed a Motion, which Plaintiff's counsel chose to entitle "Motion for Extension of Time to Complete Discovery", on the Court's docketing system. Doc. #56. The actual caption of the one page Motion reads as follows: "Plaintiff's Second Amended Motion for Continuance for Discovery to Respond to Defendant's Motion for Summary Judgment." The body of the Motion contains a sentence that states that the Plaintiff is asking for a "continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken[,] in order so [sic] she may present facts essential to justify its [sic] opposition to Defendant's motion for summary judgment." Id. at 1. In her memorandum attached to that Motion, the Plaintiff argues that her new counsel had not had sufficient time to conduct discovery and requested that she be given additional time to "gather affidavits, depositions and various employment records and statistics," but does not mention an intent or request to file an additional memorandum. Id. The Court sustained the "Motion for Extension of Time to Complete Discovery", *nunc pro tunc*, by Notation Order, dated April 24, 2009. In the intervening time period, the Plaintiff filed the aforementioned third memorandum in opposition to the Defendant's Motion for Summary Judgment

---

[2]The Court also filed the Plaintiff's sur-reply memorandum, *nunc pro tunc*, as of the date of the Notation Order sustaining the Plaintiff's Motion for Leave to File the same. Doc. #76.

(Doc. #63), on March 25, 2009, without otherwise having sought leave of Court to do so.

The Plaintiff now moves the Court, asking it to vacate that part of its Decision, dated August 31, 2009, which determined that the Plaintiff's third memorandum in opposition had not been properly filed and, thus, would not be considered by the Court in ruling on the pending Motion for Summary Judgment. Doc. #78. Therein, the Plaintiff asserts that her Motion for Extension of Time to Complete Discovery and the Court's Notation Order sustaining said Motion "[gave] rise to the Court authorizing the Plaintiff's [third] response to summary judgment." Id. at 3.

Rule 7.2 of the Local Civil Rules for the United States District Court for the Southern District of Ohio begins by instructing a party to submit a memorandum in support of any Motion. S.D. Ohio Civ. R. 7.2(a)(1). The Rule then allows for the submission of a memorandum in opposition to such a Motion, which is to be filed within twenty-one days from the date of service set forth in the certificate of service attached to the Motion, as well as for a reply memorandum, which is to be served within eleven days after the date of service of the memorandum in opposition. Id. R. 7.2(a)(2). The Rule concludes by stating that "[n]o additional memoranda beyond those enumerated will be permitted except upon leave of court for good cause shown." Id.

It is questionable whether the Plaintiff requested leave of Court to file her

third memorandum in opposition to the Defendant's Motion for Summary Judgment.  The only thing that can arguably be interpreted as such is the caption on her Motion for Extension of Time to Complete Discovery ("Plaintiff's Second Amended Motion for Continuance for Discovery to Respond to Defendant's Motion for Summary Judgment") and the one sentence in that Motion that states that the Plaintiff is asking for a "continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken[,] in order so [sic] she may present facts essential to justify its [sic] opposition to Defendant's motion for summary judgment."  Giving all deference to the Plaintiff, however, the Court will interpret said Motion as requesting leave to file her third memorandum in opposition (Doc. #63) and, thus, will SUSTAIN the Plaintiff's Motion for Partial Relief from Judgment or Order (Doc. #78), but will consider the memorandum in question only to the extent provided herein.

Attached to the Plaintiff's third memorandum in opposition are 17 exhibits. Thirteen of those (Exhibits A-K and the Plaintiff's Affidavit) are duplicates of exhibits she filed in support of her first memorandum in opposition. Doc. #58. Two of the others are contained elsewhere on the record (Exhibits L and O).[3] Thus, the only two new exhibits attached to the Plaintiff's memorandum are Exhibit M, which appears to be an excerpt from a labor union handbook, and

---

[3]See Doc. #41-2 at 7-8 for a duplicate of Exhibit L and see any of the Plaintiff's multiple EEOC filings for a copy of an EEOC complaint, which is filed as Exhibit O.

Exhibit N, which appears to be an excerpt from an EEOC handbook.  Thus, the

Court will consider the Plaintiff's third memorandum in opposition (Doc. #63), only

to the extent that it relies on Exhibits M and N, in support of its arguments

therein.[4]


II.    Facts[5]

Roe, a black female, worked as a civilian data support specialist at WPAFB,

from 1996-2001.  Her position was coded as GS-05, Family Advocacy Data

Support Specialist.  Doc. #58-13 at 3.  Between 1999 and 2002, Roe filed the

following EEOC and union complaints/grievances:[6]

---

[4]Neither of these Exhibits is labeled, but are filed at Document #63-15
(Exhibit M) and Document #63-16 (Exhibit N).  Also, neither of these Exhibits is in
proper Federal Rule of Civil Procedure 56 form, in that they are not properly
authenticated. See id.  Giving all possible deference to the Plaintiff, however, the
Court considered these documents as if authenticated, yet they did not turn out to
be instrumental in helping the Plaintiff to satisfy her burden, as further described
herein.

[5]Since this case comes before the Court on the Defendant's Motion for
Summary Judgment, the Court sets forth the facts and circumstances giving rise to
such Motion in the manner most favorable to the Plaintiff, as the party against
whom the Motion is directed. Servo Kinetics, Inc. v. Tokyo Precision Instruments,
475 F.3d 783, 790 (6th Cir. 2007).

[6]In support of her Memorandum in Opposition to the Defendant's Motion for
Summary Judgment, rather than setting forth properly cited facts in support of her
hostile work environment claim, the Plaintiff generally states that she has
"attached to [her] memorandum . . . an exhibit of additional hostile events and
abuses for this Court to consider in making its decision on the Defendant's motion
for summary judgment." Doc. #58 at 7.  The cited exhibit contains 13 pages of
single spaced allegations. Doc. #58, Ex. E.  In so doing, the Plaintiff has effectively

- **EEOC Complaint #WE1M99148, dated July 1999, alleging racial discrimination.** Complaint based on supervisor telling her that, since she had missed a lot of work and was behind in her assignments, she was being relived from her duties and would be assigned to cover the front desk, until a white coworker "cleaned [her] work up." Doc. #58-7 at 1-3 (EEOC Complaint #WE1M99148).[7]

---

turned her 20-page, double-spaced memorandum into a 46-page double-spaced memorandum, in contravention of this Court's local rules. See S.D. Ohio Civ. R. 7.2(a)(3). Based on this fact, as well as that this Court "is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim," InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)," the Court has not relied on the cited Exhibit in ruling herein. Instead (and in concert with the concerns expressed by the Defendant's arguments pertaining to the Plaintiff's failure to exhaust, noted *infra*), the Court has relied on the allegations made by the Plaintiff in her various EEOC and union complaints and grievances, which are similar to those set forth in the 13 page single spaced document. On its own initiative, the Court has culled out of these complaints and grievances (which are properly on the record) the summary presented in this Facts section.

[7]The Court pauses here to note that the Defendant has asserted that the Plaintiff has failed to exhaust her administrative remedies with respect to certain of her claims. Doc. #41 at 7-11. In so doing, the Defendant is, in essence, contending that the Plaintiff's Amended Complaint contains numerous factual allegations that she did not previously present in an administrative complaint. However, the Plaintiff has not relied on the assertions contained in her Amended Complaint, in responding to the Defendant's Motion for Summary Judgment. See Doc. #58 (Pl.'s Mem. Opp'n); Doc. #76 (Pl.'s Sur-Reply Mem.). When assessing the Plaintiff's arguments and the evidence relied upon in support thereof, the Court will remain mindful of the requirement that the Plaintiff must have exhausted the administrative remedies available to her, prior to filing this suit. Haithcock v. Frank, 958 F.2d 671, 675 (6th Cir. 1992). In so doing, the Court will construe her previously filed EEOC complaints "to encompass all claims 'reasonably expected to grow out of the charge[s] of discrimination'" contained therein, Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 732 (6th Cir. 2006) (quoting Haithcock, 958 F.2d at 675), and will consider only that evidence, upon which she properly relies and which falls within these dictates.

The Court has also considered the Plaintiff's argument that the Court should consider patterns of continuing harassment that are part of the same actionable hostile work environment, as set forth in her third memorandum in opposition. Doc. #63 at 6-8 (citing Exhibit N thereto). The Court will do so, herein, only to the

- EEOC Complaint #WE1M01021, dated December 2000, alleging
  retaliation.  Alleging that Roe's supervisor (Captain Postal) gave Roe
  performance feedback in the presence of her new supervisor (Captain
  Loper), which Roe did not think adequately reflected her performance.
  Doc. #58-13 at 2-9 (EEOC Complaint #WE1M01021).

- EEOC Complaint #WE1M01034, dated January 2001, alleging race and
  sex discrimination and retaliation. Complaint based on Roe's new
  supervisor (Loper) delaying Roe's position upgrade until she (Loper) had
  a chance to evaluate Roe's performance herself,[8] as well as on the
  following three comments:  (1) a co-worker describing a woman as an
  "African-American with thick lips"; (2) Loper telling Roe and a female
  coworker that she (Loper) "thought you were getting ready to kiss";
  and (3) Loper telling Roe and a female coworker, "[n]ext, you will be
  holding hands." Doc. #58-13 at 11-24 (EEOC Complaint
  #WE1M01034).

- Union Grievance, dated March 2001. Alleging that Roe's personnel file
  improperly contained prior EEO activity information. Doc. #58-14 at 2-
  12 (Union Grievance, dtd Mar. 29, 2001).

- EEOC Complaint #WEIM01061, dated April 2001, alleging retaliation.
  Complaint makes following allegations: (1) Roe was only member of
  staff bound to certain time constraints; (2) management had placed
  paperwork for upgrade of her position from GS-05 to GS-07 on hold;[9]
  (3) her position description did not reflect her current duties; (4) a
  memorandum in her personnel file made reference to her EEO complaint;
  (5) Loper discussed Roe's EEO's participation in presence of a
  coworker; (6) Roe was denied use of official time to conduct EEO
  business; (7) her duties and responsibilities were inappropriately

---

extent that the Plaintiff provides proper cites to the record in support of any such
factual contentions. See notes supra note 6.

[8]This allegation pertains to the Air Force's decision to do away with the
position occupied by the Plaintiff and create a new position, described more fully
later in this opinion. Doc. #41-3 at 29.

[9]This allegation pertains to the Air Force's decision to do away with the
position occupied by the Plaintiff and create a new position, described more fully
later in this opinion. Doc. #58-13 at 28.

changed; (8) management directed her not to leave her workstation, which resulted in her urinating on herself; (9) EEO counselor did not process her EEO complaint properly. Doc. #58-13 at 25-35 (EEOC Complaint #WE1M01061).

- Amendment to Complaint #WE1M01034 and Complaint #WE1M01061, dated October 2001. This amendment added the following new claims to Roe's previous Complaints: (1) ratings on annual performance appraisal were lower than Roe deserved; (2) Roe's position was improperly posted, internally, for "fill" action, as GS-07; (3) after having applied for said position, Roe was not selected for an interview; (4) Roe's position was improperly posted, externally, for "fill" action, as GS-06; (5) after having applied for said position, Roe was not selected for an interview. Doc. #58-13 at 37-39 (Ltr. From Atty. Moses, dtd. Oct. 24, 2001).

- EEOC Complaint #WE1M02027, dated January 2002, alleging race/color discrimination and retaliation. Complaint alleges the following: (1) that Roe performed a higher grade of work from 1996-2001, without receiving credit or pay for the same; (2) despite being told she had been rated as "qualified" for the previously noted GS-06 position, she was not selected for that position, yet a white employee with no prior experience was, and she was reassigned to perform receptionist duties; (3) Roe was not selected for a different GS-06 position, in another department. Doc. #58-13 at 41-53 (EEOC Complaint #WE1M02027).

- Union Grievance, dated November 2002. WPAFB interfered with Roe and her union representative, at a settlement conference. Doc. #58-14 at 13-19 (Union Grievance, dtd. Nov. 15, 2002).

Central to the Plaintiff's claims in this litigation are the allegations made in the latter EEOC Complaints pertaining to the Secretary's failure to select her for the new position in her department. Additional details will now be provided about that situation.

In the late 1990s, the Air Force revised its Family Advocacy Program, in order to encompass a more broad-based continuum of services. Doc. #41-2 (Air

Force Mem.) at 8. As part of that revision, it substituted, throughout its bases, a newly created Social Services Assistant (GS-07) position for the Data Support Assistant (GS-05) position that was then occupied by Roe, at WPAFB. Id. at 8-13. When the Air Force announced this change in structure, it advised that "there was a strong possibility that the incumbent would not qualify for the new position," due to the differences in the two positions. Doc. #41-4 (Fetterman Decl.) at 25-26. The job description for the Data Support Assistant focuses on clerical work and data input, while the one for the Social Services Assistant focuses on client interaction, intervention, and assessments. Doc. #59, Exs. C1, C2 (Job Descriptions).

In response to the new directive, Captain Gregory Postal (Captain Loper's predecessor and Roe's previous supervisor) requested that a Social Services Assistant position be established at WPAFB, in October 2000. At that time, Postal spoke with Roe about the forthcoming change in position and told her that he had asked the Medical Center Committee to request an overage position for Roe, so she would not be surplused, if found unqualified for the new position. Doc. #41-4 (Postal Decl.) at 24. Postal left his position before approval was received for the change in position, so his successor, Loper, was responsible for implementing the change. Doc. # at 41-4 (Pagan-Pumphrey Aff.) at 19.

On July 10, 2001, Loper advertised internally for the new position, at the GS-07 level, but was unsuccessful in finding a qualified candidate to fill that

position. Id.; Doc. #58-9 at 2 (Int. Job Posting)).  Loper then decided to reclassify

the position as a GS-06 and to advertise the position externally, which she did on

October 1, 2001. Doc. #58-9 at 6 (Ext. Job Posting); Doc. #59-10 at 2.  A list of

candidates for the newly posted position was issued, finding fourteen qualified

candidates, including Roe. Doc. #41-4 (Williamson Aff.) at 20.  The top two

qualified candidates received 10-point veteran's preferences, while Roe was ranked

fifth on the candidate list. Id.  According to a WPAFB specialist in EEOC

procedures, a 10-point preference candidate rises to the top of the selection pool

and an appointment officer may not pass over a preference eligible candidate,

unless an objection to the preference is sustained. Id.  Consequently, the two

preference candidates were the only candidates from which Loper could select to

fill the new position. Id.  One of those candidates was offered and accepted the

position. Id.

On December 21, 2001, the Department of the Air Force notified Roe that

she had not been selected for the new position, stating "[a]lthough you were rated

qualified[] for this position, another candidate was selected." Doc. #58-12 at 2

(Ltr. from Dept. of AF to Roe).  Roe was subsequently moved to a different

position. Doc. #41-4 (Williamson Aff.) at 10-11.


III.    Summary Judgment Standard

Summary judgment must be entered "against a party who fails to make a

12

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Id.</u> at 323; <u>see also</u> <u>Boretti v. Wiscomb</u>, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." <u>Talley v. Bravo Pitino Rest., Ltd.</u>, 61 F.3d 1241, 1245 (6th Cir. 1995); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. <u>Celotex</u>, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." <u>Mich. Prot. & Advocacy Serv., Inc. v. Babin</u>, 18 F.3d 337, 341 (6th Cir. 1994).

13

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).  In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506

14

U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

IV.   Analysis

The Court will begin its analysis of the Defendant's Motion for Summary Judgment by addressing the Plaintiff's hostile work environment claim. It will then consider the Plaintiff's racial discrimination and retaliation claims, in turn. The Court will conclude its analysis with a discussion of the Plaintiff's claim for intentional infliction of emotional distress.

A. Hostile Work Environment

As her first claim for relief, the Plaintiff alleges that the Defendant subjected her to a hostile work environment, in retaliation for her participation in protected activity (i.e., her filing of various EEOC/union complaints and grievances). Doc. #11 (Am. Compl.) ¶¶ 96-103. To establish a *prima facie* case of retaliatory harassment, under Title VII, a plaintiff must prove the following:

15

(1)     [she] engaged in activity protected by Title VII;

(2)     this exercise of protected rights was known to defendant;

(3)     . . . [she] was subjected to severe or pervasive retaliatory harassment by a supervisor; and

(4)     there was a causal connection between the protected activity and the . . . harassment.

Hunter v. Sec'y of United States Army, 565 F.3d 986, 996 (6th Cir. 2009) (quoting Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000)).

With regard to the third prong of the retaliatory, hostile work environment test, the Supreme Court has determined that a hostile work environment exists when the workplace "is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367 (1993) (internal citation and quotation marks omitted).  When making the objective determination of whether alleged conduct is sufficiently severe or pervasive enough to establish a hostile work environment, the Sixth Circuit instructs that a court must consider the totality of the circumstances in the work environment. Bowman v. Shawnee State Univ., 220 F.3d 456, 463 (6th Cir. 2000).  "The issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether—taken together—the reported incidents make out such a case." Id. (citing Williams v. GMC, 187 F.3d 553, 562 (6th Cir. 1999))

16

(emphasis in original).

The Supreme Court has identified four factors for courts to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment. They include: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. 17 at 23; see also Morris, 201 F.3d at 790. To demonstrate that the conduct created an objectively hostile or abusive work environment, a plaintiff must show that the conduct constituted more than mere teasing, offhand comments and isolated incidents, but, rather, was severe or pervasive enough to actually alter the "terms and conditions of employment." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271, 121 S. Ct. 1508, 1510 (2001). Stated another way,

> Title VII does not prohibit genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex. . . . [S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.

Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275 (1998) (internal quotations and citations omitted).

Pointing primarily to the incidents contained in one of the EEOC complaints, the Defendant, in the present action, contends that the Plaintiff has not set forth sufficient evidence to satisfy the third prong of this test (whether the alleged

conduct created an objectively hostile or abusive work environment). Doc. #41 at

11-14. In response, the Plaintiff states that "[w]hen all of [the] hostile events and

abuses are taken as a whole, a reasonable person could and should find that the

Plaintiff's work environment is so severe as to alter the conditions of the victim's

employment and create a[n] abusive work environment."[10] Doc. #58 at 8. Other

than citing cases for general propositions of law, the Plaintiff points to no case

law, setting forth analogous facts, in support of her contention. Factually, she

points only to the allegation that she urinated on herself, because management had

directed her not to leave her workstation.[11] Id.

---

[10]The Plaintiff also states that she "presents this Court with a number of additional hostile events and abuses (See Exhibit E)." Doc. #58 at 8. Exhibit E is the improperly cited Exhibit referred to *supra,* note 6, which the Court declines to consider.

[11]The Plaintiff also makes an attempt to bootstrap onto the Defendant's factual allegations, pertaining to the one EEOC complaint, by stating that "the examples of hostile events and abuse acknowledge[d] by the Defendant . . . are sufficient for a reasonable person to find the Plaintiff was in a hostile work environment." Doc. #58 at 7. Even if the Court were to allow the Plaintiff to adopt the Defendant's factual statements as her own, many of those allegations are not harassment related (e.g., EEOC memoranda had been placed in her personnel file; reassignment of duties (an allegation of adverse employment action, rather than harassment)). The few remaining allegations that are arguably allegations of harassment are either too vague (e.g., she was the only employee bound by time constraints) or insufficiently severe (e.g., supervisor unduly delayed her performance appraisal and denied her official time to work on EEOC complaint) to constitute the severe and pervasive conditions necessary to satisfy the Plaintiff's burden. See Batuyong v. Gates, 2009 U.S. App. LEXIS 15100, **14-17 (6th Cir. July 6, 2009) (adopting the lower court's findings that the plaintiff's allegations that supervisor repeatedly "raised his voice, inappropriately, became verbally abusive, and chastised me in front of others," as well as refusing to allow her to attend a conference and denying her travel expenses to an event at which she had been invited to speak, were "vague and, even if believed, do not amount to

On its own initiative,[12] the Court has located information in the record that more fully explains the urination incident.[13]  In the 13 page list of what she describes as "examples of hostile events and abuses" (Doc. #58-2 (Roe Aff.) ¶13), the Plaintiff explains that, when she was assigned to work at the front desk of her office, Captain Loper had instructed her that she could not leave that position until she got someone to cover for her.  One day, she had to use the restroom, but was unable to find a coworker to cover for her.  Despite her instructions not to leave her post, she decided to leave anyway and, on her way to the bathroom, "could not hold back and [] urinated on [my]self." Doc. #58-8 at 3.

As noted above, Supreme Court jurisprudence requires a plaintiff to demonstrate that her workplace is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," in order to

_____

objectively severe or pervasive conduct in violation of Title VII").

[12]Although the Court previously indicated that it would not consider the 13 page list, in arriving at its conclusions herein (see *supra* note 6), because the Plaintiff has provided no context for her general allegation pertaining to the urination incident, the Court felt compelled to search for more facts pertaining thereto.

[13]As an aside, the Court points out that it has spent countless hours combing the record in this case for admissible evidence (primarily in the bodies of the EEOC and union complaints/grievances) to support the Plaintiff's case, as well as searching for factually similar case law.  In the end, the Court determined that it was stretching too far, in an attempt to do the Plaintiff's work for her, thus penalizing the Defendant, and, instead, decided to rely only on the sparse arguments made in her memoranda.

satisfy the third prong of her *prima facie* case of retaliatory, hostile work environment discrimination. <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21, 114 S. Ct. 367 (1993) (internal citation and quotation marks omitted). While unfortunate and certainly embarrassing, the Court simply cannot conclude that an employer instructing an employee not to leave her position at the front desk, without finding a coworker to cover for her, is sufficient evidence to satisfy the burden placed upon her to present evidence that creates a genuine issue of material fact demonstrating a hostile work environment. <u>Mich. Prot. & Advocacy Serv., Inc. v. Babin</u>, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff.").

Having found that there is no genuine issue of material fact as to whether the Defendant subjected the Plaintiff to a hostile work environment, in retaliation for her participation in protected conduct, the Court SUSTAINS the Defendant's Motion for Summary Judgment (Doc. #41), as to the retaliatory, hostile work environment claim (Count I).

B.      <u>Race Discrimination and Retaliation</u>

In Counts II and III of her Amended Complaint, the Plaintiff alleges that the Defendant's failure to offer her the new Social Services Assistant position was discriminatory conduct, based on her race and in retaliation for her filing the various union grievances and EEOC complaints. Doc. #11 ¶¶ 104-09, 110-16.

The Court will begin with an analysis of whether the Plaintiff has set forth

sufficient evidence to establish her *prima facie* case, as to each of these claims,

and then, if so, look at the question of whether the Defendant's alleged

nondiscriminatory reason for not selecting the Plaintiff for the new position was a

pretext for discrimination.

### 1.    *Prima Facie* Case of Race Discrimination

A plaintiff carries the initial burden of establishing a *prima facie* case of race

discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed.

2d 668, 93 S. Ct. 1817 (1973).  A plaintiff satisfies this burden by demonstrating

the following:

(1)  that [she] is a member of a protected group,

(2)  that [she] was subject to an adverse employment decision,

(3)  that [she] was qualified for the position, and

(4)  that [she] was replaced by a person outside of the protected class
     . . . . [or] by showing that similarly situated non-protected
     employees were treated more favorably.

Talley v. Bravo Pitino Rest., 61 F.3d 1241, 1246 (6th Cir. 1995) (citation omitted);

see also McDonnell Douglas, 411 U.S. at 802; Chappell v. GTE Prods. Corp., 803

F.2d 261, 265 (6th Cir. 1986).

The Plaintiff, in this litigation, has clearly satisfied the first and fourth prongs

of the test, given that she is black and the person appointed to the new Social

Services Assistant position is white.  The Plaintiff points to the Defendant's failure to offer her the new Social Services Assistant position, to support the second prong's requirement of an adverse employment action.  As to the third prong (whether she was qualified for that position), the Plaintiff points to the letter she received from the Defendant informing her that, "[a]lthough you were rated qualified[] for this position, another candidate was selected." Doc. #58-12 at 2. The Defendant does not challenge the Plaintiff's assertions pertaining to her *prima facie* case (focusing, instead on the pretext arguments presented below).

The Court agrees that the Plaintiff has arguably set forth sufficient evidence to create a genuine issue of material fact as to her *prima facie* case of race discrimination. See Smith v. City of Salem, 378 F.3d 566, 575-76 (6th Cir. 2004) ("Examples of adverse employment actions include . . . failing to promote . . . ."). After its consideration of the Plaintiff's *prima facie* case of retaliation, the Court will next determine whether the Defendant has established a legitimate, nondiscriminatory reason for its non-selection of the Plaintiff for the new position and whether that reason was merely a pretext for race discrimination and/or retaliation.

### 2.    *Prima Facie* Case of Retaliation

In order to prove that an employer retaliated against an employee for participation in protected conduct, absent direct evidence of retaliatory

22

discrimination, the employee must show the following:

(1)  she engaged in activity protected by Title VII;

(2)  this exercise of protected rights was known to defendant;

(3)  defendant thereafter took adverse employment action against the plaintiff. . .; and

(4)  there was a causal connection between the protected activity and the adverse employment action . . . .

Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 595 (6th Cir. 2007) (citing

Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000)).  The

Defendant argues that the Plaintiff cannot satisfy the third or fourth prong of this

test. Doc. #60 at 7.

As to the third prong, the Plaintiff once again points to the Defendant's

failure to offer her the new Social Services Assistant position, as an alleged

adverse employment action. Doc. #58 at 15.  With regard to the fourth prong,

whether there was a causal connection between the Plaintiff's protected activities

and the Defendant's failure to offer her the new position, the Plaintiff states that

"[t]he protected activities of using the various grievance procedures preceded the

adverse action of failing to promote the Plaintiff,"[14] which is apparently an

---

[14]In her "causal connection" argument, the Plaintiff also argues that her supervisor revealed information about her past filing conduct to the decision makers, which goes to the second prong of the test (whether the decision makers knew of her protected conduct), rather than the fourth prong. Id. at 15-16.  She also attempts to argue that the Defendant added a requirement to the new position to make her unqualified (id. at 16), which contradicts her earlier argument that the Defendant determined that she was qualified for the position and also is not

asserton that there was temporal proximity between her protected activity and her non-selection for the new position. Id.

A causal connection is found where the plaintiff "proffer[s] evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." Michael, 496 F.3d at 596 (quoting Dixon v. Gonzales, 481 F.3d 324, 333 (6th Cir. 2007)). Temporal proximity alone is usually insufficient to support a causal connection. Id. However, the Sixth Circuit has found that "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008); see also DiCarlo v. Potter, 358 F.3d 408, 421 (6th Cir. 2004) ("[I]n certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise."). Conversely, where the nexus is not "very close," the Court has declined to find a causal connection based on timing alone. Lindsay v. Yates, 2009 U.S. App. LEXIS 18849, *26, 2009 Fed. App. 0301P (6th Cir. Aug. 21, 2009).

----

relevant to whether there is a causal connection between the failure to select her for the new position and her filing conduct.

Thus, in resolving the causal connection question, the Court must discern whether the Plaintiff's assertion of temporal proximity alone is sufficient to satisfy her burden. It will do so if her non-selection for the new position occurred "very close in time" after the Defendant learned of her protected conduct. Unfortunately, the answer to this question is not clear.

The record shows that the Plaintiff filed EEOC complaints and/or union grievances on the following dates, prior to her notification that she had not been selected for the new position: July 1999, December 2000, January 2001, March 2001, April 2001 and October 2001. Three other dates that may be pertinent to the present decision are: July 10, 2001 (the date the Defendant made the internal posting for the new position, at the GS-07 level), October 1, 2001 (the date the Defendant made the external posting for the new position, at the GS-06 level) and December 21, 2001 (the date the Defendant notified the Plaintiff that she had not been selected for the new position). It is unclear at what point in time the Plaintiff is alleging the adverse employment action occurred. Her memoranda can be read to imply that the Defendant should have selected her for the GS-07 position that was posted internally (in July 2001), or that, once the Defendant decided to downgrade the opening from a GS-07 to a GS-06, the position should have been posted internally before it was posted externally (in October 2001) or that the Defendant should have selected the Plaintiff over the employee who was ultimately selected (in December 2001). See Doc. #58 (Pl.'s Mem. Opp'n), Doc. # 76 (Pl.'s

Sur Reply Mem.).

Because of the numerous complaints and grievances filed by the Plaintiff, some of which occurred in close proximity to the dates potentially alleged as adverse employment actions, there arguably remains a genuine issue of material fact as to whether the Plaintiff has satisfied her *prima facie* case of retaliation discrimination. Thus, the Court will turn to a consideration of the Defendant's alleged reasons for not selecting the Plaintiff for the new position and whether those reasons were legitimate and nondiscriminatory or, instead, a pretext for discrimination.

### 3. Legitimate Nondiscriminatory Reason and Pretext

Once a plaintiff establishes a *prima facie* case of either race discrimination or retaliation discrimination (or sets forth sufficient evidence to create a genuine issue of material fact as to the same), the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for its decision. DiCarlo v. Potter, 358 F.3d 408, 420 (6th Cir. 2004) (retaliation); Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000) (race discrimination). If the defendant carries its burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered were pretextual. DiCarlo, 358 F.3d at 420; Dews, 231 F.3d at 1021.

A plaintiff can demonstrate pretext by showing that the proffered reason "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged

conduct, or (3) was insufficient to warrant the challenged conduct." Dews v. A.B.

Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000) (citing Manzer v. Diamond

Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994)). "In order to prove

pretext, therefore, the plaintiff must introduce admissible evidence to show 'that

the proffered reason was not the true reason for the employment decision' and that

[discriminatory] animus was the true motivation driving the employer's

determination." Grace v. USCAR, 521 F.3d 655, 677-78 (6th Cir. 2008) (quoting

Barnes v. UPS, 366 F. Supp. 2d 612, 616 (W.D. Tenn. 2005)).

In the present case, the Defendant argues that the legitimate,

nondiscriminatory reason for not selecting the Plaintiff for the new Social Services

Assistant position was that the selection process merely unfolded pursuant to

standard Air Force procedures for posting and filling such positions. Initially, the

target grade for the new position, as established by the Air Force, was GS-07,

which is the level at which the Defendant first posted the job opening, internally.

As a level GS-05 employee, the Plaintiff was not qualified for consideration for a

position two levels above hers. Doc. #41-4 at 21 (Griffith Aff.) (noting that, in

order to be eligible for a GS-07 position, an applicant must have twelve months of

experience at the GS-06 grade). The Defendant then states that once the decision

was made to downgrade the position to a GS-06 level, it was permissible to

advertise the position externally (which posting was also open to internal

candidates). In support thereof, the Defendant points to the Federal Service Labor-

Management Relations Statute, 5 U.S.C. § 7106, which provides that, when filling positions, management officials may make selections for appointment from "(i) among properly ranked and certified candidates for promotion; or (ii) any other appropriate source." 5 U.S.C. § 7106(a)(2)(C). The Defendant then directs the Court's attention to Air Force Regulation 40-300, which provides that Air Force positions may be filled from any of the following sources:

(1)    Inservice placement of current Air Force employees.

(2)    Transfer or appointment of employees from other federal agencies.

(3)    Reinstatement or reemployment of eligible former federal employees.

(4)    Other appointments, including appointments from [Office of Personnel Management] registers.

USAF Reg. 40-300, §A, ¶1a. The Air Force Regulation goes on to provide that selecting officials may consider the listed sources simultaneously, in the discretion of the selecting officials, to wit:

The availability of eligible Air Force employees who could be considered through merit promotion to other inservice placement procedures does not prevent a decision to restructure a vacant position and fill it at a different grade level. Nor does the availability of merit promotion or other inservice candidates prevent a search outside Air Force for an appointment of qualified and available persons to the Air Force rolls.

Id. §A, ¶1b. The Defendant thus contends that this statutory and regulatory authority demonstrates that the decision to post the position externally was a legitimate, nondiscriminatory means of filling the new position. Further, the

28

Defendant notes that once the position was posted and the 10-point preference candidates applied and were found qualified for the position, the Defendant was required to offer the open position to one of those candidates, unless a proper objection was sustained, which did not happen here. See 5 CFR § 332.406(c) (noting that "an agency may not pass over a preference eligible to select a non-preference eligible unless OPM or an agency with delegated authority also makes a determination that the sufficiency of the reasons is supported by the evidence submitted for the pass over request").

On a more pragmatic note, the Defendant points out that rather than taking the second step of downgrading the opening to a GS-06 and posting it externally, management could have decided to post the position externally at the GS-07 level, which would not have given the Plaintiff the opportunity to be considered (given her GS-05 status). Thus, its decision actually favored the Plaintiff. Also, the Defendant points out that there are no facts to indicate that, even if the supervisor had decided to advertise the GS-06 position internally (rather than externally), the Plaintiff would have been the most qualified individual to apply.[15]

---

[15]Alluding to the downgrade of the position from the GS-07 level to the GS-06 level, the Plaintiff asserts that "[h]ad the Defendant announced the position internally as he announced it externally the Plaintiff, Ms. Roe[,] would have been [selected] for the position." Doc. #76 at 2. The Plaintiff provides no citation for this assertion. As noted above, there is no way to prove such a hypothetical conclusion, in that it is impossible to tell which employees would have applied for this posting and whether any of those hypothetical internal applicants would have had a 10-point preference or otherwise been found to be more qualified than the Plaintiff.

Based on a consideration of the reasons set forth by the Defendant, the Court concludes that the Defendant had legitimate, nondiscriminatory reasons for the decision to post the new opening in the manner it was posted and then to offer the position to the 10-point preference candidate. Therefore, the Court will sustain the Defendant's Motion for Summary Judgment, on the race discrimination and retaliation claims, unless the Plaintiff has set forth sufficient evidence to demonstrate that the Defendant's proffered reasons are merely a pretext for discrimination.

In order to rebut the Defendant's legitimate, nondiscriminatory reasons, the Plaintiff points to Exhibit M to her third memorandum in opposition, in support of her assertion that "[t]he Defendant was required to announce the position internally prior to announcing the position externally." Doc. #63 at 15. Exhibit M has not been properly authenticated, but it appears to be an excerpt from a Master Labor Agreement. Doc. #63-15. The applicable paragraphs of that document, to which the Plaintiff points, provide that "[t]he Employer retains the right to select or nonselect employees for competitive merit promotions under the procedures set forth in this Article, and in accordance with applicable law, rule and regulation" and "[m]anagers with vacancies will consult with the staffing office to assure that consideration is given to bargaining unit employees prior to a determination to go to outside sources." Id. at 2.

For several reasons, the Plaintiff has not satisfied her burden of pointing to

sufficient evidence to create a genuine issue of material fact as to whether the legitimate, nondiscriminatory reason offered by the Defendant is actually a pretext for discrimination. First, the sole document upon which she relies is unauthenticated. The Court, therefore, does not know, among other things, whether this document was even in effect at the time in question. Second, even if the document were authenticated, the Plaintiff has pointed to no evidence to indicate that the manager with the vacancy in question did not "consult with the staffing office to assure that consideration was given to bargaining unit employees prior to a determination to go to outside sources," as required by the agreement. Furthermore, even if the Plaintiff had pointed to sufficient evidence to demonstrate that the Defendant was bound to follow the Agreement and did not do so, the Plaintiff has pointed to no case law (and the Court has found none) that stands for the proposition that an employer's violation of a labor agreement is sufficient to demonstrate pretext, or, in other words, that the Defendant's failure to follow the binding labor agreement demonstrates a discriminatory animus toward the Plaintiff.

On this point, the Court observes that this Court does not sit in judgment, as if it were the Federal Labor Relations Authority, of whether the Defendant has committed an unfair labor practice by violating the terms of the labor agreement. Such claims are typically brought under § 301 of the Labor Management Relations Act, not Title VII. See <u>Northwestern Ohio Adm'rs, Inc. v. Walcher & Fox, Inc.</u>, 270 F.3d 1018, 1030 (6th Cir. 2002) (holding that claims for breach of collective

bargaining agreements fall within the ambit of § 301);[16] see also Hazen Paper Co.

v. Biggins, 507 U.S. 604, 612, 123 L.Ed. 2d 338, 113 S. Ct. 1701 (1993) (noting

that the violation of one federal statute does not necessarily equate with the

violation of another federal statute).

Because the Plaintiff has set forth no evidence to create a genuine issue of

material fact, on the issue of pretext, the Court SUSTAINS the Defendant's Motion

for Summary Judgment (Doc. #41), as to the claims for race discrimination (Count

II) and retaliation (Count III).


    C.    <u>Intentional Infliction of Emotional Distress</u>

As her fourth claim for relief, the Plaintiff alleges that the Defendant

intentionally inflicted emotional distress upon her, apparently as a result of the

---

[16]If an employer breaches a collective bargaining agreement, courts have recognized that an employee may bring a Title VII discrimination suit against a <u>union</u> (rather than an employer), based on a union's representation of the employee. To successfully do so, the employee must establish the following: "(a) the employer committed a violation of the collective bargaining agreement; (b) the union permitted the violation to go unrepaired, thereby breaching its own duty of fair representation; and (3) the union was motivated by [discriminatory] animus." <u>Rice v. Randall Bearings, Inc.</u>, 2007 U.S. Dist. LEXIS 75045 (N.D. Ohio Oct. 9, 2007) (citing <u>Bugg v. International Union of Allied Indus. Workers, Local 507 AFL-CIO</u>, 674 F.2d 595, 598 n. 8 (7 Cir.), cert. denied, 459 U.S. 805, 103 S.Ct. 29, 74 L.Ed.2d 43 (1982); <u>Vargas v. Hill</u>, 152 F. Supp.2d 315, 318-319 (S.D.N.Y. 2001); <u>Patterson v. United Steelworkers of America, Local 9</u>, 2005 U.S. Dist. LEXIS 13019, 2005 WL 1539264 at *2 (N.D. Ohio June 30, 2005)). In this case, however, the Plaintiff has not raised a discrimination claim against the union.

various actions described above.[17] Doc. #11 (Am. Compl.) ¶ 117-20.  The

Defendant moves for summary judgment on this claim, asserting that Title VII

provides the exclusive remedy for claims of discrimination and, thus, the Plaintiff is

precluded from bringing this claim. Doc. #41 at 17-18.  In response, the Plaintiff

argues that she should be allowed to amend her Amended Complaint in order to

allege the proper statute, under which she is bringing her claim for intentional

infliction of emotional distress. Doc. #58 at 17.  She has not, however,

subsequently filed a motion to so amend her Amended Complaint.

The basic premise of the Defendant's argument is correct.  The Sixth Circuit

has recognized that "[f]ederal employees must rely upon Title VII and other federal

antidiscrimination statutes like the ADEA that apply to the federal government as

the exclusive remedy for combating illegal job discrimination." Briggs v. Potter, 463

F.3d 507, 517 (6th Cir. 2006) ("In amending Title VII [and other federal statutes]

to include federal employees, Congress created an exclusive judicial remedy for

claims of discrimination in federal employment." (quotation omitted)).  Despite this

general premise, however, this Court has previously recognized that Title VII does

not preclude plaintiffs from bringing claims which, "although based on the same

---

[17]As to this claim, the Plaintiff's Amended Complaint does nothing more
than make a reference to the preceding facts and claims, and then states that the
Defendant owed a duty to the Plaintiff, that it breached its duty and that the
Plaintiff suffered injury, as a direct and proximate result of the alleged breach. Doc.
#11 (Am. Compl.) ¶¶ 117-20.  The most clear inference is that the facts and
circumstances that gave rise to the previous three claims also gave rise to the
intentional infliction of emotional distress claim.

facts and circumstances as the Title VII claim, are based on a violation of a distinct and independent right." Wallace v. Henderson, 138 F. Supp. 2d 980, 986 (S.D. Ohio 2000). "To hold that such claims are precluded by Title VII would deprive plaintiffs of a remedy for injuries which are not addressed by that statute." Id. Therefore, if the Plaintiff's intentional infliction of emotional distress claim was as a result of race discrimination or retaliation in the workplace, Title VII precludes the claim. If, however, she "seeks redress for a 'highly personal injury,' beyond discrimination or retaliation," Title VII does not preclude the claim.[18] Id.

In the present case, the Plaintiff's Amended Complaint implies that she is bringing her intentional infliction of emotional distress claim, as a result of race

---

[18]In order to prove a state tort law claim for intentional infliction of emotional distress, a plaintiff must establish the following four elements:

> 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community," 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that "no reasonable man could be expected to endure it."

Pyle v. Pyle, 11 Ohio App. 3d 31, 34, 463 N.E.2d 98 (Ohio 8th App. Dist. 1983) (quoting Restatement (Second) of Torts § 73, § 77 (1965)). However, in order to bring such a claim against the United States, a plaintiff must do so under the Federal Tort Claims Act (FTCA), wherein the United States has waived its sovereign immunity with respect to state tort claims. See 28 U.S.C. §2674. In this case, the Amended Complaint neither sets forth these elements nor indicates that the Plaintiff is proceeding under the FTCA, so the Court will not proceed with an analysis of such a claim.

discrimination or retaliation, rather than basing it on a violation of a distinct and independent right. See Doc. #11 (Am. Compl.) ¶¶ 117-20.  Since the Defendant filed its Motion for Summary Judgment, the Plaintiff has had an opportunity to correct this perception, either in her memoranda in opposition to the Defendant's Motion or by requesting permission to amend her Amended Complaint.  Having done neither, the Court concludes that her intentional infliction of emotional distress claim is precluded by Title VII.  There being no genuine issue of material fact on this claim, then, the Court SUSTAINS the Defendant's Motion for Summary Judgment (Doc. #41), as to the claim for intentional infliction of emotional distress (Count IV).

V.    Conclusion

The Defendant's Motion for Summary Judgment is SUSTAINED, in its entirety. Doc. #41.  The Plaintiff's Motion for Partial Relief from Judgment or Order is SUSTAINED, as provided herein. Doc. #78.  Judgment is to be entered on behalf of the Defendant and against the Plaintiff.

The above captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

September 21, 2009

35

/s/ Walter Herbert Rice
                              WALTER HERBERT RICE, JUDGE
                              UNITED STATES DISTRICT COURT


Copies to:
Counsel of record